# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **BARBARA SMITH,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  1:19-cv-01943-ACA** |
| | } | |
| **SOCIAL SECURITY** | } | |
| **ADMINISTRATION,** | } | |
| **COMMISSIONER,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff Barbara Smith appeals the decision of the Commissioner of Social Security denying her claim for supplemental security income.  Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Smith applied for supplemental security income, alleging that her disability began on January 1, 2016.  (R. at 10).  She later amended that date to December 23, 2016.  (R. at 10, 247).  The Commissioner initially denied Ms. Smith's claims (R. at 10), and Ms. Smith requested a hearing before an Administrative Law Judge ("ALJ") (*id.*).  After holding a hearing (*id.*), the ALJ ruled against Ms. Smith (R. at 10–20).  Ms. Smith appealed the ALJ's ruling, but the Appeals Council denied

Ms. Smith's request for review.  (R. at 1–3).  Thus, the Commissioner's decision is final and ripe for the court's judicial review.  42 U.S.C §§ 405(g), 1383(c)(3).

## II.    STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted).  "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted).  The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."  *Winschel*, 631 F.3d at 1178 (quotation marks omitted).  The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Henry*, 802 F.3d at 1267 (quotation marks omitted).  Moreover, the court must reverse the Commissioner's decision if the ALJ

does not apply the correct legal standards.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step, sequential evaluation process.  The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Smith had not engaged in substantial gainful activity since the date of the alleged onset of her disability.  (R. at 12).  The ALJ found that Ms. Smith's history of obesity, degenerative disc disease and stenosis of the lumbar spine, asthma with tobacco use, diabetes mellitus with reported neuropathy, and bipolar affective disorder are severe impairments.  (*Id.*).  The ALJ then concluded that Ms. Smith did not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (*Id.*).

After considering the evidence, the ALJ determined that Ms. Smith had the residual functional capacity to perform light work with certain additional limitations. (R. at 14).  Ms. Smith's limitations include: the inability to climb ladders, ropes, or scaffolds; limited exposure to temperature extremes, dust, odors, fumes, or pulmonary irritants; the inability to use vibrating tools or equipment; and no exposure to unprotected heights.  (*Id.*).  In addition, Ms. Smith would not be able to carry out complex instructions or engage in long term planning or negotiation.  (*Id.*).  She can make simple, work-related decisions and tolerate occasional interaction with supervisors, but she can have no more than superficial interaction with members of the general public.  (*Id.*).

Based on Ms. Smith's residual functional capacity and the testimony of a vocational expert, the ALJ found that Ms. Smith could perform her past relevant work as a house cleaner.  (*Id.* at 19).  The vocational expert also found that jobs exist in the national economy that Ms. Smith can perform at the light exertional level, including assembler or hand packer.  (R. at 129).  Accordingly, the ALJ determined that Ms. Smith has not been under a disability, as defined in the Social Security Act, from September 9, 2016, through the date of the decision on November 16, 2018. (*Id.* at 7, 20).

## IV.   DISCUSSION

Ms. Smith argues that the ALJ failed to correctly apply the pain standard. (Doc. 9 at 7).  Specifically, Ms. Smith claims that the ALJ did not properly consider evidence that Ms. Smith's back pain made her unable to perform a light range of work, and that the ALJ did not consider substantial evidence of Ms. Smith's overall pain.  (Doc. 9 at 7–8).

In the Eleventh Circuit, a claimant must follow a two-step process to establish disability through testimony of pain or other subjective symptoms.   *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  First, the claimant must present evidence of an underlying medical condition.   *Id.*  Next, the claimant must show either (1) "objective medical evidence that confirms the severity of the alleged pain arising from that condition" or (2) "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Id.*

Here, the Commissioner does not dispute that Ms. Smith presented evidence of back pain and mental impairments.  (*See* R. at 18).  Thus, the only question before the court is whether substantial evidence supports the ALJ's determination that Ms. Smith's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (R. at 18).

The ALJ's decision demonstrates that he "considered [Ms. Smith's] medical condition as a whole." *Dyer*, 395 F.3d at 1211. Although Ms. Smith's records contain medical evidence that could be construed to benefit Ms. Smith, it is not this court's prerogative to reweigh the evidence or substitute its judgment for the ALJ's. *See Winschel*, 631 F.3d at 1178. Substantial evidence supports the ALJ's credibility determination. First, Ms. Smith argues that the ALJ should have given more consideration to the medical records showing a single MRI's findings of advanced degenerative spondylosis. (R. at 426; Doc. 9 at 8). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer*, 395 F.3d at 1211. Based on the entirety of Ms. Smith's medical records, the ALJ determined that Ms. Smith's complaints were not consistent with the objective medical evidence.

Ms. Smith testified that her back pain was her main debilitating ailment. (R. at 116). But the ALJ noted that the treatment for Ms. Smith's back pain had been consistently conservative, only including medication. (R. at 16). Ms. Smith received no physical therapy, surgery, or other type of pain management. (*Id.*). Although Ms. Smith was referred to a neurosurgeon for her back, there is no performance or even recommendation of surgery present in Ms. Smith's medical records. (R. at 441, 505, 517). No medical record from a neurosurgeon was even presented. Evidence of a conservative course of treatment, like the one here,

discredits a claimant's testimony regarding the level of their pain. *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996).

Ms. Smith went to the Emergency Room at Stringfellow Memorial Hospital three times since 2014, and on only one of those occasions did she complain of back pain. (R. at 383–89, 403). During that one occasion in 2016 the nurse's notes state that "at their worst the symptoms were moderate." (R. at 403). In addition, Dr. McKitty, Ms. Smith's treating physician, commented that there was "no acute distress" in Ms. Smith's back when she came in complaining of back pain. (R. at 520).

There are also notes throughout Ms. Smith's medical records indicating that she did not comply with her prescribed medication or that she failed to show up for appointments. (R. at 452, 474, 504). The ALJ can consider noncompliance as a factor that discredits allegations of disability. 20 C.F.R. § 416.930(b); *see also Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("[T]he refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability."). Here, Dr. McKitty notes that Ms. Smith "did not go to scheduled appointments." (R. at 504). Also, Ms. Smith did not consistently take her prescribed medications for bipolar disorder or attend her psychiatric therapy appointments. (R. at 452, 474). The ALJ found that because Ms. Smith showed consistent

noncompliance in taking her medication and attending appointments that her "symptoms might not have been as limiting as [] alleged." (R. at 19).

A large portion of Ms. Smith's medical records deal with her mental state and not her back pain. In conversations with her psychiatrist, Dr. Jorge Castro, Ms. Smith explained that she was under significant stress. (R. at 345). Not only was she taking care of her elderly mother with Alzheimer's disease, she also had custody of her two grandchildren, because her daughters were either incarcerated or unable to care for the children due to drug addictions. (R. at 18, 279). Dr. Castro consistently reported that Ms. Smith was depressed and anxious but alert, logical, goal-directed, and cooperative. (R. at 353, 355, 358). Her life was overwhelmed with stressors, but about a year into the therapy Ms. Smith reported that she was "doing good." (R. at 469).

Ms. Smith argues that Eleventh Circuit caselaw prohibits an ALJ from denying a claim based on participation in everyday activities of short duration. (Doc. 9 at 12) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability.")). Ms. Smith also contends that, "[i]t is well established that sporadic or transitory activity does not disprove disability." (*Id.*) (citing *Smith v. Califano*, 637 F. 2d 968, 971–72 (3d Cir. 1981)).

But the ALJ did not deny Ms. Smith's claim based on her participation in everyday activities of short duration.  First, both the hearing testimony and report by the state agency team psychologist, Dr. Leslie Rogers, indicate that Ms. Smith is a caregiver to multiple others besides herself and can do an array of personal and caregiving activities on her own. (R. at 116, 121, 137).  Specifically, the evidence in Ms. Smith's file "supports no more than moderate limitations" on her capacity to work.  (R. at 137).

Second, the ALJ relied on more than just Ms. Smith's testimony about her daily activities to find that her description of the intensity, persistence, and limiting effects of her symptoms were not consistent with the record.  (*See* R. at 27–28).  The ALJ examined all of Ms. Smith's medical records in conjunction with Ms. Smith's personal activities.  The ALJ also considered testimony from the vocational expert, medical consultants, psychological consultants, and evidence from non-medical sources such as family and friends.  This evidence shows that Ms. Smith has been engaging in daily activities that include a light range of work throughout the problems with her back and mental impairments.  Substantial evidence supports the ALJ's credibility determination and her application of the pain standard.

In October of 2016, Ms. Smith reported that in one day she would often wake up at 5:30 a.m. to get her grandchildren ready for school, take care of her ill mother, do household chores, take her grandkids to their afterschool activities, and get them

ready for bed.  (R. at 279).  Ms. Smith is able to take care of her grandchildren, despite describing it as a "24/7" activity.  (R. at 286).  She is also able to shop for groceries, household items, and Christmas gifts.  (R. at 285).  Ms. Smith's close family friend, Chris McFarland, said that Ms. Smith took care of her mother by bathing her, feeding her, and doing all of the housework.  (R. at 251).  Ms. Smith is involved in the community, goes to church regularly, and attends football games. (R. at 255).  Ms. Smith does comment that she is unable to attend some events alone, but the fact that she can attend at all indicates that her pain levels may not be as debilitating as she describes.

Ms. Smith claims that her daughters help her with their children "sometimes when they are here."  (R. at 283).  There were multiple reported fights with her daughters, some of them even turning physical.  (R. at 485).  Most recently in 2018, Ms. Smith was appointed guardian to her eight-year-old grandson, because her daughter who was just released from prison "doesn't want anything to do with her son."  (R. at 544).  The ALJ found that Ms. Smith's ability to perform daily living activities contradicts her allegation that she is unable to work in any capacity.  (R. at 19).  Instead, it is consistent with the ability to perform a light range of work.  (*Id*.)

Finally, based on Ms. Smith's residual functional capacity and the testimony of the vocational expert, the ALJ found that Ms. Smith could perform her past relevant work as a house cleaner.  (R. at 20).  The vocational expert also found that

jobs exist in the national economy that Ms. Smith can perform at a light exertional level, including assembler or hand packer.  (R. at 129).  Since Ms. Smith is able to perform her past work, as well as seek out additional employment, disability is not warranted in this circumstance.  As indicated, the ALJ's reliance on the testimony of the vocational expert was proper and supports the finding that Ms. Smith is not disabled and is capable of performing jobs available in the national economy.

## V.    CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Smith's application for supplemental security income and this court **WILL AFFIRM** the Commissioner's decision.  The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this November 20, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE